SENCO PRODUCTS, INC.

v.

INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO–CLC and its local union IUE Local 678

and

Larry Williams, individually and as an officer (International Representative) and agent of the above.

Civ. A. No. 7409.

United States District Court,
S. D. Ohio, W. D.

Feb. 24, 1970.

Stanley H. Foster, Cincinnati, Ohio, for plaintiff.

Jerry Venn, Cincinnati, Ohio, for defendant IUE Local 678.

ORDER ON APPLICATION FOR PRELIMINARY INJUNCTION

HOGAN, District Judge.

The plaintiff's application for an interlocutory injunction was heard on notice to the defendant. The hearing was evidentiary.

The action is by an employer, Senco Products, Inc., plaintiff, against a defendant Local Union, and jurisdiction of this Court is asserted, and found to exist, under the Lanham Act, the trademark infringement statutes, and, insofar as a claim of unfair competition is concerned (commonlaw-wise) under 28 U.S.C. § 1338(b).

The plaintiff is and for many years has been engaged in the manufacture of staplers and related products, such as brads or nails, nailers, etc. It distributes its products nationally and, either by distributors or branches, does business in practically all of the United States.

In or about 1951, the trademark "Senco" was registered as a trademark for staples. The mark has become uncontestable and has been in continuous use since 1951. The same trademark was registered in 1951 for staplers and pneumatic tackers. Since that time the mark "Senco" has been extensively used by the plaintiff in connection with communications with its employees, in a house newspaper, in notices, bulletins, instruction materials, service manuals, reports, etc.

In promoting its name, the plaintiff has expended hundreds of thousands of dollars and because of its wide usage and promotion, in national as well as local organs and media, the name Senco can be said to have acquired a secondary meaning, at least in this general area. The name "Senco" used by itself would be attributed to the plaintiff.

In late 1969, the International Union involved here (also a party defendant) initiated proceedings to organize the Senco manufacturing plant in Cincinnati. In the broad sense of employee, Senco employs something in the neighborhood of 1,000 people. An application was made to the International Union for a charter for a local, which local was to organize the plaintiff's employees, and, if successful, presumptively would continue to exist as a local unit limited to plaintiff's employees. Whether the charter itself contained the name Senco in connection with the local is not clear one way or the other from this record at this time and is considered, in any event, immaterial.

Some time in December of last year the Local had advanced sufficiently in its organizational activities that on December 24th the defendant Local filed an election petition with the NLRB and although no election has been held as yet, it is apparent that, at least since December, proceedings involving the election, the determination of the bargaining unit, eligible employees, etc. have been going forward before the NLRB. There is no doubt on this record that there is a dispute existing between the parties to this case on whether or not the Union has or has not advanced to the point where it could qualify in an election as the bargaining representative. The usual contest in connection with such matters is going on and in connection with that contest, the defendant Union has circularized the employees at least four times. The handbills or dodgers contain the heading in bold print on the first line, "Senco" and on the second line, in equal prominence, "Local 678 News."

Basically the interlocutory injunction sought would prohibit the Union from using the name "Senco" in connection with its distributions to the employees. The claim is that the use is intended to and does leave the impression with readers of the handbills that the defendants are in some way sponsored or approved, or recommended, or licensed by the plaintiff.

This is an unusual trademark case— whether so or not, it has been described by both of the parties as "of first impression."

Neither the International nor Local defendant is selling any product [1]

---

1. 15 U.S.C. § 1114, of course, deals with both "products and services" and is directed against persons (including labor unions [15 U.S.C. § 1127]). It is limited to "persons" dealing in "goods or services." Assuming that a labor union in "organizing" is dealing in goods or services in "commerce"—which we find unnecessary to decide—nonetheless a Lanham Act (or common law—National City Bank of Cleveland v. National City Window Cleaning Co., 174 Ohio St. 510, 190 N.E.2d 437 [1963]) injunction must rest, ultimately, on a use which "is likely to

in the commonly accepted use of the term. If one would concede that the name Senco has acquired a secondary meaning, or that the mark has been promoted to the point where it is a mark "in gross," and for the present purposes those concessions may be made—nonetheless, the first question in any unfair competition case in fundamentally this: Would an innocent unsuspecting person, with even the most cursory examination of the handbills, be likely to be confused and arrive at any understanding or conclusion that the bills were being circulated under the sponsorship of the plaintiff? It is here determined as a question of fact that no such conclusion can reasonably be said to result therefrom. Equal prominence is given both to Senco and Local 678 News. Fairly read, a glance at one of the bills would simply lead to the conclusion that a Local Union involving Senco employees was expressing what is expressed in the handbills.

Secondly—the evidence clearly indicates that there is a labor dispute in fact between the parties to this case. This is not a case in which the defendant Union is selling a product or thing or process in the ordinary commercial sense and using the plaintiff's name. It is a case which arises in the context, not of competition over commercial matters, but in a labor dispute. The Norris-La-Guardia Act, Section 1, provides point-edly that, "No court of the United States shall have jurisdiction to issue any \* \* \* injunction in a case involving or growing out of a labor dispute. \* \*" Section 4 of the same Act provides:

"No court of the United States shall have jurisdiction to issue any \* \* injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute from \* \* \*

"(e) Giving publicity to the existence of or the facts involved in, any labor dispute, whether by advertising, speaking \* \* \* or by any other method not involving fraud or violence."

It would be difficult for a union, giving the publicity that is specifically protected by the Act, to aught but name the employer. So long as the employer's name is used in such a way that the casual reader would clearly understand that it was the Union and not the employer issuing the publicity, it would seem clear that the Norris-LaGuardia Act would prohibit this Court from issuing an injunction in the present context of this dispute.[2]

The facts and conclusions are sufficiently stated in the foregoing to satisfy the requirements of F.R.Civ.P. 52.

It is ordered, therefore, that the application for an interlocutory injunction be and the same hereby is denied.

---

cause confusion, or to cause mistake, or to deceive." The test relates to "producing confusion as to origin." Seven Up v. Get-UP, 340 F.2d 954 (6th Cir. 1965).

2. There is room for accommodation between Lanham and Norris LaGuardia. The question is one of degree and deals with the particularities of the case—in a pure "commercial case" a union is, of course, subject to a Lanham injunction, or un-fair competition injunction. See Fitzgerald v. Abramson, 89 F.Supp. 504 (S. D.N.Y.1950), in which the Court distinguished between the two areas in fashioning the injunction (at p. 512). In our view, while the primary ground for decision is the lack of confusion, it appears that this case arises primarily in a labor dispute context and secondarily, if at all, in a "commercial goods and services" area.